**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Crim. Nos. 19-362 |
| v. | **OPINION & ORDER** |
| SHARIFE ROBERSON, | |
| *Defendant*. | |

**John Michael Vazquez, U.S.D.J.**

Currently pending before the Court are numerous submissions from Defendant Sharife Roberson in which he seeks immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). D.E. 94, 95, 100, 107, 108, 109, 111. The Government filed opposition. D.E. 99. At the outset, the Court notes that two of the issues raised by Roberson—improper jail credit calculations and his prior state heroin conviction as not being a controlled substance offense under U.S.S.G. § 4B1.2(b)—do not appear suited to disposition through 18 U.S.C. § 3582(c)(1)(A). As a result, the Court previously entered an order denying relief under Section 3582(c)(1)(A) as to the two issues but permitting Defendant to seek relief under the appropriate statutes.[1] D.E. 113. As to the remaining issues raised by Roberson, the Court reviewed the parties' submissions and

---

[1] In addition, Roberson's arguments as to aggravated assault not being a crime of violence and the constitutionality of United States Sentencing Guidelines' enhancement for an obliterated serial number, D.E. 111, 112, are not bases for compassionate relief. However, Defendant is not prohibited from raising those issues—if he deems it appropriate—in connection with the jail credit and/or heroin issues.

considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b).  For the following reasons, Defendant's motion is denied.

## I.     BACKGROUND

### A.  Underlying Criminal Proceeding

On September 6, 2018, the Bayonne Police Department contacted the New Jersey State Parole Board, reporting that Defendant had been involved in a shooting.  PSR ¶ 7.  Roberson was under parole supervision at the time.  *Id.*   At 4:34 a.m. that day, another suspect fired on Roberson while he was in his car; video footage revealed that Roberson shot back.  *Id.* ¶¶ 7-8.  A later search of Roberson's residence revealed a handgun, hidden beneath used diapers in Defendant's bedroom, with a defaced serial number. *Id.* ¶ 14.

In a plea agreement dated September 23, 2019, Defendant agreed to plead guilty to possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 55.  Defendant pled guilty on December 11, 2019.  D.E. 39.  Roberson was then sentenced on October 29, 2020.  D.E. 65.  The sentencing had been delayed because Roberson fired his privately retained counsel, and the Court appointed a public defender to represent him.  D.E. 57. Roberson's United States Sentencing Guidelines' calculation resulted in a range of 100 to 125 months, which was reduced to 100 to 120 months due to the ten-year statutory maximum sentence. PSR ¶ 80.  The Court granted a downward variance and sentenced Roberson to 92 months' imprisonment.  D.E. 66, 77 at 35.  Because Roberson had to serve the remainder of a state sentence (and also be sentenced on another state matter) before entering federal custody, the Court ordered that he begin serving his federal sentence while in state custody as of the day of the federal sentencing.  D.E. 66, 77 at 37.  The Court later entered an amended judgment and sentenced Defendant to 83 months' imprisonment.  D.E. 83.

Defendant is currently housed at USP Canaan in Pennsylvania.  His projected release date is September 20, 2026.

**B.  COVID-19 Pandemic**

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person."  *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html #background.  "COVID-19 is primarily transmitted from person-to-person through respiratory droplets.  These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.*  Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death).  *Id.*  As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices.  *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases.  *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.   For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties.  *Id.*  Those 85 or older are at greatest risk.  *Id.*  Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States.  *Id.*  The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver

diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection, immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last update Feb. 25, 2022),[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Finally, racial and ethnic minorities may also be at an increased risk due to societal inequities, such as to access to health care and poorer living conditions. *Coronavirus Disease 2019 (COVID-19)*, "Health Equity Considerations and Racial and Ethnic Minority Groups," Centers for Disease Control and Prevention (July 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html. Factors to be considered are discrimination; healthcare access and utilization; occupation; educational, income, and wealth gaps; and housing. *Id.*

As of November 29, 2022, the United States had 98,481,551 COVID-19 cases, resulting in 1,075,779 deaths. *CDC COVID Data Tracker*, "United States COVID-19 Cases and Deaths by State," https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (Nov. 29, 2022).

### 1. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action

---

[2] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus, and initially admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screening for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but who has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of fourteen days or until cleared by medical staff. Opp. at 5. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. As of November 29, 2022, the BOP had administered 339,704 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 29, 2022).

As of November 29, 2022, the BOP COVID-19 statistics are as follows: (1) currently 237 inmates and 199 staff presently have confirmed positive tests; (2) 47,815 inmates and 14,591 staff

have recovered; and (3) 309 inmates and 7 staff have died.  *COVID-19 Cases*, Federal Bureau of Prisons,  https://www.bop.gov/coronavirus/index.jsp  (Nov. 29, 2022).   USP Canaan, where Defendant is housed, currently has 0 positive inmate cases and 2 positive staff cases while 378 inmates and 208 staff have recovered.  *Id.*

### C.  Roberson's Motion

Roberson is 31 years old.  In his initial brief, Defendant sought release for the following reasons:   poor conditions in East Jersey State Prison (specifically concerns over allegedly contaminated water); COVID-19 lockdown requirements at East Jersey State Prison; slightly high cholesterol levels; the fact that he contracted COVID-19 twice; medical issues with one of his eyes; and his employment while in prison.  D.E. 94.  Roberson also claims that the following entitle him to compassionate release:  poor conditions at the Essex County Correctional Facility (where he was housed upon completing his state sentence and awaiting transfer to a federal facility), lack of access to eyedrops for a few days, a history of migraine headaches, and a thirteen-day lockdown at USP Canaan in August 2022 due to COVID-19.  D.E. 94, 109.[3]

In opposition, the Government asserts that Roberson's motion should be denied because he failed to exhaust his mandatory administrative remedies, he has not demonstrated extraordinary and compelling reasons warranting compassionate release, and the Section 3553(a) factors weigh against granting his motion.  D.E. 99.

### II.   LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

---

[3] Roberson also claims that he received an excessive state sentence, D.E. 94 at 11, and that he improperly pled guilty to a state charge because of ineffective representation, D.E. 107 at 1-2. Neither issue is a basis for compassionate release.  Moreover, neither issue is properly raised, for the first time, in federal court.   If Defendant believes that there were errors in certain state prosecutions, he must first seek relief in state court.

(c) Modification of an imposed term of imprisonment.  The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in

Section 1B1.13.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018)

("U.S. Sentencing Guidelines Manual").  The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).  In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant.  *Id.*

### III.   ANALYSIS

The Court concludes that Defendant has not met his burden in demonstrating extraordinary and compelling reasons to justify his release.  First, he has failed to exhaust his required administrative remedies.  Defendant fails to show that he has first sought release from any warden, much less the warden of USP Canaan.  Second, Roberson has not demonstrated that he may be at a heightened risk of severe illness should he contract COVID-19.  Neither his age nor any of his stated medical conditions put him in a higher risk category.  To the contrary, he indicates that he has contracted COVID-19 twice and appears to have fully recovered.  In addition, USP Canaan currently does not have any positive inmate cases.

Finally, the Section 3553(a) factors countenance against release.  Defendant has not served half of his sentence.  The Third Circuit has found that the amount of time remaining on a sentence is an appropriate consideration under Section 3553(a) when a defendant seeks compassionate

release.  *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020).  The Circuit reasoned as follows:

> We have not previously considered whether a district court abuses its discretion by denying a motion for compassionate release based on the amount of time remaining to be served in the inmate's sentence. But numerous district courts have taken this into account in considering whether to grant compassionate release. *See, e.g.*, *United States v. Bogdanoff*, 459 F. Supp. 3d 653 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1–2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and  protecting the public [would] not [be] fully served by less than 10 years of incarceration"). And at least one of our sister circuits has approved that consideration. *See* [*United States v.*] *Chambliss*, 948 F.3d [691,] 694 (5th Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30-year sentence). We agree, as this consideration is consistent with the text of 18 U.S.C. § 3582(c)(1)(A), which, again, requires a court reviewing a motion for compassionate release to "consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable." Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may— along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors. Hence we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.

*Id.* at 330-31 (footnote omitted).

Other Section 3553(a) considerations also countenance against release.  His past criminal history includes convictions for drugs, burglary, and carjacking.  Moreover, he committed the

instant offense while on parole, and his criminality was discovered based on his firing shots at another assailant.

For the foregoing reasons, Roberson has not shown that he is entitled to compassionate release.

## IV.    CONCLUSION

As a result, and for good cause shown,

IT is on this 30th day of November 2022 hereby

**ORDERED** that Defendant Sharife Roberson's motions to modify his sentence and for immediate compassionate release, D.E. 94, 95, 100, 107, 108, 109, 111, are **DENIED**; and it is further

**ORDERED** that the Clerk's Office mail a copy of this Order to Defendant by regular mail.

John Michael Vazquez, U.S.D.J.